IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JAMES A. BAKER, RAYMOND WOLFE, and )
WILLIAM PATE, and INDEPENDENT )
MERCHANTS AND MACHINISTS )
ASSOCIATION, )
)
        Plaintiffs, )
)    No.   03 C 1750
v. )
)    Judge Robert W. Gettleman
ALFRED D. KINGSLEY, GARY D. )
DUBERSTEIN, DAVID D. JONES, JR., )
ROGER L. FIX, RICHARD KATZ, )
RONALD HIRAM, FRANK SICA, and )
GREENMARINE HOLDINGS, LLC.[1], )
)
        Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiffs James Baker, Raymond Wolfe, and William Pate, individually and on behalf of all others similarly situated, filed a two-count second amended complaint against Alfred Kingsley, Gary Duberstein, James Rusk[2], David Jones, Jr., Roger Fix, Richard Katz, Ronald Hiram, Frank Sica, and Greenmarine Holdings, LLC ("Greenmarine"). Count I of the two-count second amended complaint stated a claim under the Illinois Wage Payment and Collection Act ("Wage Act"), 820 ILCS § 115/5,

---

[1] The court notes that plaintiffs' third amended complaint does not include a complete caption. Unlike previous complaints, the current caption does not state that Baker, Wolfe, and Pate bring the action "on behalf of themselves and all others similarly situated." The third amended complaint, however, includes class allegations and plaintiffs' counsel referenced putative classes during oral argument. The third amended complaint also fails to list all of the defendants, as required by Fed. R. Civ. P. 10(a), but lists only "Albert Kingsley, et. al."

[2] As the court noted in its opinion dated December 10, 2003, on May 28, 2003, the court granted plaintiffs' motion to voluntarily dismiss James Rusk. Baker v. Kingsley, 294 F. Supp. 2d 970, 973 n. 1 (N.D. Ill. 2003). The docket still does not reflect his dismissal, and he was included in the caption of the second amended complaint. He is not, however, listed as a defendant in the party allegations.

and Count II stated a claim under the fiduciary provisions of § 102 and § 404 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1022 and 1104. In its memorandum opinion and order dated December 10, 2003, this court granted defendants' motion to dismiss plaintiffs' ERISA claim, held that the Wage Act claim was not preempted by § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and remanded the case to state court. Baker v. Kingsley, 294 F. Supp. 2d 970 (N.D. Ill. 2003).

On appeal, the Seventh Circuit reversed the dismissal of the ERISA claim, held that the Wage Act claim was preempted by § 301 of the LMRA[3], and remanded the case for further proceedings consistent with its opinion. Baker v. Kingsley, 387 F.3d 649 (7th Cir. 2004). After remand to this court, plaintiffs were granted leave to amend. On December 22, 2004, plaintiffs filed a six-count third amended complaint, which added the Independent Merchants and Machinists Association ("IMMA") as a plaintiff.[4] In Counts I, II, and IV of the third amended complaint, the individual plaintiffs state claims under the Wage Act for vacation benefits (Count I), and severance and retention benefits (Counts II and IV). In Count III, the IMMA states a claim, in the alternative, for severance and retention benefits under § 301 of the LMRA. In Count V, the individual plaintiffs allege an ERISA violation for failure to fund a health and welfare plan.[5]

---

[3]Section 301 provides,"Suits for violation of contracts between an employer and a labor organization representing employees...may be brought in any district court of the United States having jurisdiction of the parties." 29 U.S.C. § 185(a). The parties agree that the Shutdown Agreement is properly characterized as a collective bargaining agreement.

[4]Defendants argue that plaintiffs cannot add the IMMA as a plaintiff because it is "dissolved." Plaintiffs, however, allege that the IMMA continues to function as a union, which is sufficient at the pleading stage.

[5]On May 25, 2005, the court granted plaintiffs' motion to voluntarily dismiss without
(continued...)

Defendants Kingsley, Duberstein, Sica, Jones, and Greenmarine filed a joint motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) & (7). Defendant David Jones ("Jones") also filed a separate memorandum of law, arguing that the complaint against him should be dismissed under Fed. R. Civ. P. 8 and 9(b). Defendant Roger Fix ("Fix") filed a separate motion to dismiss pursuant to Fed. R. Civ. P. 8, 9(b), and 12(b)(6) & (7).[6] After reviewing the parties' written submissions and hearing oral argument on the instant motion, the court denies in part and grants in part defendants' motion to dismiss, denies Fix's motion to dismiss, and denies Jones's motion to dismiss.

## FACTS[7]

Plaintiffs Baker, Wolfe, and Pate were employees of Outboard Marine Corporation ("OMC"), in its Waukegan, Illinois manufacturing and production facility. Plaintiff IMMA is a labor organization within the meaning of § 301 of the LMRA and a signatory to the collective bargaining agreement ("CBA") with OMC. According to the third amended complaint, the individual plaintiffs worked for OMC at the Waukegan plant until the shutdown of the plant on December 20, 2000, and were terminated on December 21, 2000. At the time of their termination, the individual plaintiffs

---

[5](...continued)
prejudice Count VI, alleging false statements regarding continued health coverage.

[6]The court notes that it does not appear from the docket that defendants Richard Katz and Ronald Hiram, who were named in the second amended complaint, have been dismissed, but neither defendant filed a response to the third amended complaint. The party allegations in the third amended complaint list Hiram as a defendant, but not Katz.

[7]For the purposes of a motion to dismiss, the court accepts all well-pleaded allegations as true and draws all reasonable inferences in favor of the plaintiff. Travel All Over the World, Inc. v. Kingdom of Saudi Arabia, 73 F.3d 1423, 1428 (7th Cir. 1996).

were active or retired participants in OMC's health and welfare plan ("OMC Health Plan") and were working under a shutdown agreement ("Shutdown Agreement), signed by OMC and the IMMA. Under the Shutdown Agreement, a copy of which is attached to the third amended complaint, the individual plaintiffs had earned rights to severance, retention and vacation pay at the time of their termination. OMC did not pay these benefits. OMC filed for Chapter 11 bankruptcy on December 22, 2000. The individual plaintiffs, at the direction of their union, the IMMA, filed claims in the bankruptcy court for payment from OMC. During the bankruptcy proceedings, OMC admitted the amounts owed for severance, retention, and vacation pay. On February 9, 2001, the bankruptcy court approved the sale of substantially all of the assets of OMC for approximately $90 million.

Section 12(b) of the Shutdown Agreement provides that employees "who are terminated or permanently laid off during the term of this Agreement shall be paid their earned but unused Vacation." Sections 18 and 19 provide for retention and severance benefits for employees terminated or permanently laid off pursuant to Section 8(I)(b). Section 8(I) enumerates seven circumstances in which an employee shall be considered terminated. Section 8(I)(b) provides:

> "An employee is permanently laid off or terminated due to the transfer or relocation of work (including work-in-progress), equipment or materials to other OMC facilities, subcontracting of work to outside companies (including loaning, selling or otherwise transferring equipment, materials or products to subcontractors), subcontracting of work to subcontractors to perform bargaining unit work within the plant on equipment loaned, leased, sold or otherwise transferred to the subcontractor, and/or the consolidation or discontinuance of operations, and has not performed any work for the Company for ninety (90) calendar days."

Section 20(a) of the Shutdown Agreement also provides severance and retention benefits. It states, "In the event that the Waukegan plant is sold, rather than shut down...a Bargaining Unit employee whose employment with the Company is terminated or who is permanently laid off, pursuant to Section 8(I)(c), and is *not* offered employment with the purchaser, shall be eligible to

receive retention benefits pursuant to Section 18 of this Agreement, severance benefits pursuant to Section 19 of this Agreement, and... ."(Emphasis in original.) Section 8(I)(c) states, "An employee is permanently laid off or terminated due to the sale of all or substantially all of the assets of the Waukegan Plant."

A copy of the OMC Health Plan, effective January 1, 1993, is also attached to the third amended complaint. Section X of the OMC Health Plan, titled "Plan Financing," states, "The Employer shall make contributions in such amounts and at such times as determined by the Company in accordance with a funding method and policy consistent with Plan objectives. All contributions under this Plan shall be paid to the Trustee. All assets of the Trust Fund, including investment income, shall be retained for the exclusive benefit of Participants and their beneficiaries...and shall not revert to or inure to the benefit of the Employer."

## DISCUSSION

### I. Preemption of the Wage Act claims (Counts I, II, and IV)

The third amended complaint asserts three separate counts under the Wage Act, for vacation benefits (Count I), severance and retention benefits (Count II), and unpaid wages (Count IV). Defendants argue that plaintiffs' renewed attempt to bring any claim under the Wage Act is precluded by the Seventh Circuit's holding on appeal that plaintiffs' Wage Act claims as pled in the second amended complaint were preempted by § 301 of the LMRA. The Seventh Circuit found that resolution of plaintiffs' Wage Act claims requires interpretation of the Shutdown Agreement, and directed this court on remand to consider defendants' arguments in favor of dismissal of the § 301 claim.

After the case was remanded to this court, plaintiffs were granted leave to file a third

amended complaint. The third amended complaint alleges that the individual plaintiffs were laid off due to a sale of the assets of the Waukegan Plant within the meaning of § 8(I)(c) of the Shutdown Agreement. Plaintiffs had previously argued that they were laid off due to a "discontinuance of operations" within the meaning of § 8(I)(b). Defendants argued to the Seventh Circuit that §§ 18 and 19, which provide severance and retention benefits to employees terminated pursuant to § 8(I)(b), necessarily exclude employees terminated or permanently laid off pursuant to § 8(I)(c), and that the sale of assets pursuant to a bankruptcy proceeding could be considered a sale within the meaning of § 8(I)(c).[8] The Seventh Circuit held that such an interpretation was "at least tenable," and that "[t]o determine plaintiffs' entitlement to the wage supplements, a court would have to interpret, not merely reference, these provisions of the Shutdown Agreement. Accordingly, the claim is preempted by § 301 of the LMRA." Baker, 387 F.3d at 659.

Plaintiffs now stipulate that they were terminated pursuant to § 8(I)(c), and argue that regardless of whether § 8(I)(b) or (c) applies, they are entitled to the same severance and retention benefits pursuant to §§ 18 and 19, or § 20, respectively. Plaintiffs' argument hinges on their assertion that the Seventh Circuit held that § 8(I) of the Shutdown Agreement is the only section that requires interpretation. Plaintiffs interpret the Seventh Circuit to say more than it does. The Seventh Circuit's opinion merely points to § 8(I) as an example of a provision that requires interpretation, and does not suggest that it is the only such provision. Moreover, the court of appeals' discussion of the competing interpretations of §§ 8(I)(b) and (c) highlights its holding that any amount of contract interpretation, in contrast to mere reference, mandates preemption of the claim. Baker, 387

---

[8]The court notes that according to the Seventh Circuit's opinion, defendants argued that the sale "could" fall within § 8(I)(c), not that it necessarily fell within the meaning of that section. Baker, 387 F.3d at 659.

6

F.3d at 659. Defendants argue that even after repleading for the third time and including a stipulation that § 8(1)(c) applies, plaintiffs' Wage Act claims continue to require interpretation of the Shutdown Agreement and are thus preempted. The court agrees.

Defendants point to several provisions of the Shutdown Agreement that must be interpreted. For example, § 20(a) of the Shutdown Agreement provides that only employees who were "*not offered employment with the purchaser*" are eligible for benefits. Interpretation is required to determine what constitutes an offer of employment, and which members of the putative class, if any, were made such an offer. Similarly, § 20(h) states, "Prior to their receipt of any retention and/or severance benefits required by this section as well as any other benefits provided under this Agreement, Bargaining Unit employees shall be required to sign a Confidential Release and Severance Agreement, in the attached form." To determine whether putative class members met this precondition for benefit eligibility requires more than mere reference to the Shutdown Agreement, but rather calls for interpretation, which the Seventh Circuit clearly held mandates preemption. Accordingly, plaintiffs' Wage Act claims are preempted by § 301 of the LMRA.

## II. Vacation benefits (Count I)

For the first time, plaintiffs' third amended complaint divides their Wage Act claims into multiple counts. All previous complaints, including the second amended complaint considered by the Seventh Circuit, stated only one count under the Wage Act: that defendants had denied plaintiffs' statutory rights "to have all outstanding wages, or wage supplements, including plaintiffs' earned vacation pay, severance pay, and retention pay, paid to them on termination." The Seventh Circuit ruled that the Wage Act claim was preempted in its entirety. Plaintiffs argue that even if Counts II

7

and IV are preempted, their vacation benefits claim is not because the Seventh Circuit did not specifically rule that it was preempted.

Plaintiffs' assertion that the Seventh Circuit did not specifically hold that their vacation benefits claim was preempted misconstrues the ruling and the clear intention of the Seventh Circuit. Plaintiffs presented an unified Wage Act claim in Count I of the second amended complaint, which included a claim for failure to pay "earned vacation pay." The Seventh Circuit found that Count I was entirely preempted by § 301 of the LMRA, without giving any indication that its ruling was limited to certain elements of Count I only. Plaintiffs' new, separated counts do not alter the substance of their original Wage Act claim; they continue to assert that they are owed vacation, severance and retention benefits, and unpaid wages, all of which were elements of their earlier unified claim. That is, the substance of their Wage Act claims is unchanged from the claims the Seventh Circuit found were preempted, and all of the Wage Act claims must rise or fall together. Accordingly, Count I is preempted for the same reasons as Counts II and IV.

### III. Section 301 claims (Counts I, II, III, and IV)

For the reasons stated above, Counts I, II, and IV of plaintiffs' third amended complaint must be construed as claims under § 301 of the LMRA. Count III, brought in the alternative, is also a § 301 claim against the individual directors and Greenmarine. The question, as the Seventh Circuit instructed this court to consider, is whether plaintiffs have sufficiently stated a claim under § 301. Defendants argue that Counts I, II, III, and IV fail to state a claim under § 301 of the LMRA for three reasons: (1) none of defendants is a party to the Shutdown Agreement; (2) plaintiffs have failed to allege that they exhausted the mandatory grievance procedures set forth in the Shutdown Agreement; and (3) the claims are barred by the applicable six-month statute of limitations.

Pursuant to § 301, "Suits for violation of contracts between an employer and a labor organization representing employees...may be brought in any district court of the United States having jurisdiction of the parties." 29 U.S.C. § 185(a). The Supreme Court has held that the § 301 grant of jurisdiction is extremely limited, and the Court's holding in Textron Lycoming Reciprocating Engine Div., Avco Corp. v. United Automobile, Aerospace and Agricultural Implement Workers of America, 523 U.S. 653 (1998), emphasizes its narrowness. The Textron court explained, "By its terms, this provision confers subject-matter jurisdiction only over '[s]uits for violations of contracts.'" Id. at 656. The Seventh Circuit has subsequently reasoned, "Since only parties to a contract can violate it, a plaintiff cannot possibly allege that a non-party violated a collective bargaining agreement; therefore, the plaintiff cannot assert jurisdiction under § 301 to bring a federal action against the non-party." Teamsters National Automotive Transporters Industry Negotiating Committee v. Troha, 328 F.3d 325, 329 (7th Cir. 2003). The Seventh Circuit held earlier, in Loss v. Blankenship, 673 F.2d 942, 946-48 (7th Cir. 1982), that non-parties to a CBA are not liable under § 301. "The scheme of liability under the LMRA further supports our conclusion. Where the plaintiffs allege wrong-doing by an agent of the employer, § 301(b) of the LMRA, 29 U.S.C. § 185(b), provides that the employer will be held liable." Loss, 673 F.2d at 947.

Plaintiffs fail to squarely address defendants' argument that defendants are not signatories to the Shutdown Agreement and therefore not liable under § 301, and do not offer any cases to counter defendants' case citations, which appear to preclude liability for non-parties to the CBA. The Seventh Circuit noted in Teamsters that § 301 authorizes federal courts to fashion a body of common law for the enforcement of the CBAs over which they have jurisdiction, and stated, "In general, we have viewed this authorization under § 301 as limited to disputes between signatories

9

of the [CBA]." Teamsters, 328 F.3d at 329. Plaintiffs do not argue that the general rule barring § 301 suits against non-signatories, as expressed in Teamsters and Loss, should not apply to the instant case. In fact, plaintiffs devote one paragraph to defendants' argument, which addresses Loss only and misstates its holding.

None of the defendants are signatories to the Shutdown Agreement, which was signed by the IMMA and OMC only. Accordingly, plaintiffs fail to state a claim under § 301 of the LMRA, and Counts I, II, III, and IV of the third amended complaint are dismissed. Because the court finds that plaintiffs cannot hold non-signatories liable, it need not address defendants' other arguments in favor of dismissal of the Wage Act claims.

## IV. ERISA failure to fund (Count V)

The Seventh Circuit held on appeal that plaintiffs' second amended complaint sufficiently alleged that defendants "had a cognizable duty under the specific language of the plan, and that plaintiffs' [failure to fund] claim should not be dismissed at this early stage." Baker, 387 F.3d at 663. The Seventh Circuit also held that this court "erred in holding that defendants cannot be ERISA fiduciaries with regard to funding the plan." Id. at 664. In Count V of the third amended complaint, plaintiffs again allege that defendants breached their fiduciary duty in violation § 404 of ERISA by failing to provide the long-term funding referred to in Article X of the OMC Health Plan, and by failing to turn over assets for a management committee to invest. Count V also alleges that by failing to turn over such assets to the OMC Health Plan, defendants materially modified the plan without notice, in violation of § 102 of ERISA. Defendants argue that Count V should be dismissed based on the Seventh Circuit's opinion, but defendants misunderstand both the appellate holding and its impact on remand.

Defendants assert that plaintiffs have "abandoned the claim authorized by the appellate court" and substituted an alternate claim that is neither "permitted under the Seventh Circuit's mandate" nor "legally cognizable." Count V of the third amended complaint, however, clearly asserts a failure to fund claim. Paragraph 84 alleges that defendants breached their fiduciary duties in violation of § 404 of ERISA by, inter alia, "failing to provide long term funding referred to in Article X of the OMC Health Plan." The court rejects defendants' argument that plaintiffs are barred by what defendants insistently, and incorrectly, refer to as the "law of the case" from adding the allegation that defendants materially modified the plan without notice.

To begin, defendants misconstrue the "law of the case" doctrine in general. The Seventh Circuit has noted, "The 'most elementary application' of this doctrine is that when a court of appeals has reversed a final judgment and remanded the case, the district court is required to comply with the express or implied rulings of the appellate court." Moore v. Anderson, 222 F.3d 280, 283 (7th Cir. 2000)(citations omitted). This corollary to the law of the case doctrine is often referred to as the "mandate rule," and "is only controlling as to matters within its compass." Id. That is, on remand, the district court retains the authority to dispose of other issues not addressed by the appellate court. Id. Here, the allegation that defendants materially modified the OMC Health Plan was not before the Seventh Circuit, and thus cannot be precluded by the appellate mandate. Plaintiffs were subsequently granted leave to replead their claim, and were then free to amend the complaint, including by adding claims that were not specifically barred by the appellate court's ruling, as they have permissibly done in Count V.

Even if the law of the case doctrine did apply, defendants grievously and repeatedly misstate the holding of the Seventh Circuit. Defendants incorrectly attribute the holding of this court, which

11

was reversed, to the Seventh Circuit. Page 15 of defendants' response states, "As the Circuit Court ruled, 'nothing in the OMC Health Plan suggests that defendants were fiduciaries with respect to the investment of the plan's assets or the plan's funding.' Baker, 387 F.3d at 663." Defendants' citation is actually to the Seventh Circuit's quotation of this court's earlier ruling. Defendants repeat this significant mis-attribution of the court of appeals's holding on page 13 of their reply brief. In fact, of course, the Seventh Circuit reached the opposite conclusion, and held regarding whether defendants were fiduciaries with respect to funding that, "we cannot say at this early stage in the litigation that plaintiffs can prove no set of facts that would entitled them to relief." Baker, 387 F.3d at 664.

The Seventh Circuit expressly upheld plaintiffs' failure to fund claim, which plaintiffs have permissibly realleged and amended in their third amended complaint. Accordingly, defendants' motion to dismiss Count V is denied.

V. **Motion to dismiss Roger Fix**

Fix has filed a separate motion pursuant to Fed. R. Civ. P. 8, 9(b), 12(b)(6) and 12(b)(7), which incorporates the arguments of the other defendants regarding the Wage Act claims, but also argues that Fix cannot be liable for the ERISA claims because he "was not involved during the relevant period." Because only Count V remains against any defendant, the court considers Fix's arguments regarding Count V only.

Fix asks the court to take judicial notice of the Seventh Circuit's opinion in Fix v. Quantum Industrial Partners LDC, 374 F.3d 549 (7th Cir. 2004). In Quantum, Fix brought an action against Quantum Industrial Partners LDC, which was a controlling investor of OMC, to enforce a provision of his employment agreement that entitled him to $5 million in the event of a "change of control"

of corporation. A court may take judicial notice of a finding of a prior proceeding that "is not subject to reasonable dispute." General Elec. Capital Corp. v. Lease Resolution Corp., 128 F.3d 1074, 1082 (7th Cir. 1997). Accordingly, the court takes judicial notice of the factual recitations in Quantum, including that Fix began to work for OMC as its chief operating officer in June 2000 and became its chief executive officer approximately two months later. Quantum, 374 F.3d at 551. Fix was fired on February 16, 2001, after the bankruptcy court approved the sale of substantially all of OMC's assets. Id.

Fix argues that because he was not hired by OMC until June 2000, only a few months before the shutdown occurred, he "could not be involved in any 'failure to fund' the 1993 ERISA plan." Plaintiffs respond that Fix may still liable for the a failure to fund because he was an officer and director of OMC prior to the shutdown of the Waukegan plant, and thus knew or should have known that the OMC Health Plan had no money in it. Fix does not deny that he was a fiduciary during the period he was employed by OMC, and the essence of plaintiffs' ERISA claim is that the individual defendants, including Fix, breached their fiduciary duties. The court infers from the complaint that plaintiffs allege that the "failure to provide long-term funding" continued until the Waukegan plant was shut down, which includes Fix's time as chief operating officer and then chief executive officer, however brief it was. Reading the complaint in the light most favorable to plaintiffs, Fix cannot escape liability merely by establishing that he was a relative latecomer to OMC.

The court agrees with defendants that plaintiffs cannot raise new claims in its response to the motion to dismiss. See, e.g., Thomason v. Nachtrieb, 888 F.2d 1202, 1205 (7th Cir. 1989)("[T]he Complaint may not be amended by the briefs in opposition to a motion to dismiss."). Plaintiffs' allegations in Count V, without reference to new claims suggested in argument, state an ERISA

claim against defendants, including Fix. Accordingly, Fix's motion to dismiss is denied as to the argument that his employment did not begin until June 2000.

Fix also argues that the allegations against him are insufficient under Fed. R. Civ. P. 8 and 9(b). Rule 9(b) requires that "the circumstances constituting fraud...shall be stated with particularity." Uni*Quality, Inc. v. Infotronx, Inc., 974 F.2d 918, 923 (7th Cir. 1992). Plaintiffs' "false misrepresentation" claim, however, has been dismissed. Fix does not explain if or why the heightened pleading standard of Rule 9(b) should apply to the remaining ERISA claim, which is not based on fraud. The court therefore considers Fix's Rule 8 arguments only, and finds that plaintiffs have satisfied the liberal pleading standards of Rule 8(a). See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993).

The notice pleading requirement of the federal rules established in Rule 8(a) merely requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "The civil rules, as both the Supreme Court and [the Seventh Circuit] have emphasized repeatedly, establish a system of notice pleading. The plaintiff is not required to plead facts or legal theories or cases or statutes, but merely to describe his claim briefly and simply." Shah v. Inter-Continental Hotel Chicago Operating Corp., 314 F.3d 278, 282 (7th Cir. 2002). Fix argues that plaintiffs' ERISA claim should be dismissed against him because plaintiffs failed to allege facts specific to him, and "lump 'all defendants' together." This argument, however, is relevant to the Rule 9(b) standard, and more specificity is not required to satisfy Rule 8. See, e.g., Pope v. Smith-Rothchild Financial Co., 2003 WL 22889377, at *3 (N.D. Ill. Dec. 8, 2003)(denying motion to dismiss plaintiff's breach of contract claim because plaintiff failed to allege specific facts as to each defendant). Accordingly, Fix's motion to dismiss is denied.

## VI. Motion to dismiss David Jones

Jones has filed a separate motion to dismiss all claims against him, incorporating the arguments of the other defendants. Because the other counts have been dismissed, the court considers Jones's arguments regarding Count V only. Jones, like Fix, argues that he cannot be held liable for a failure to fund because he was not employed by OMC "as of the date the critical operative acts complained of occurred," and because plaintiffs fail to satisfy the pleading requirements of Fed. R. Civ. P. 8 and 9(b). The court denies Jones's motion to dismiss for the same reasons it denies Fix's motion.

Jones asserts that his tenure as a director and an officer of OMC terminated in August 2000, prior to the shutdown of the Waukegan plant. Jones attaches a Form 8-K report dated September 7, 2000, and filed with the Securities and Exchange Commission ("SEC"), indicating that he resigned from his positions as director, chairman of the board, president, and chief executive officer of OMC effective August 28, 2000. Courts may take judicial notice of SEC filings in Rule 12(b)(6) motions without converting the motion into a Rule 56 motion for summary judgment. Stavros v. Exelon Corp., 266 F.Supp.2d 833, 844 n. 8 (N.D. Ill. 2003). Jones's argument, like Fix's, misreads plaintiffs' failure to fund claim. Plaintiffs do not allege that the failure to fund claim occurred at the time of the shutdown of the Waukegan plant only, but rather that defendants failed to fund the OMC Health Plan over a period of time that includes Jones's tenure at OMC. Jones's argument that plaintiffs fail to satisfy the pleading requirements of Rule 8 and 9(b) is nearly identical to Fix's argument, and fails for the reasons discussed above.

Accordingly, the court denies Jones's motion to dismiss.

## CONCLUSION

For the reasons discussed above, the court grants defendants' motion to dismiss Counts I through IV of the third amended complaint (Wage Act and § 301), and denies defendants' motion to dismiss Count V (ERISA). The court denies Fix's motion to dismiss, and denies Jones's motion to dismiss. Defendants are directed to answer Count V on or before July 5, 2005. This matter is set for a report on status July 7, 2005, at 9:00 am, at which time the parties are directed to present a comprehensive joint discovery plan.

**ENTER:** **June 10, 2005**

Robert W. Gettleman
United States District Judge