# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JAMES A. BAKER, et. al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 03 C 1750 |
| ) | Magistrate Judge Nan R. Nolan |
| Alfred D. Kingsley, et. al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

In this ERISA action, plaintiffs move to compel production of documents sought by a subpoena served on the law firm of Jones Day. For the reasons stated, plaintiffs' motion (Doc. 223) is granted in part and denied in part.

## BACKGROUND

Plaintiffs are participants of the former Outboard Marine Corporation's ("OMC") Consolidated Health and Welfare Plan. OMC was an international manufacturer and distributor of recreational boats and boat engines. On December 22, 2000, OMC filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. OMC's cases were converted to Chapter 7 proceedings on August 20, 2001 and a chapter 7 trustee, Alex D. Moglia, was appointed on August 24, 2001. For seven years prior to OMC's bankruptcy, the law firm of Jones Day served as outside counsel to OMC, rendering legal advice and counsel to OMC with respect to employee issues, including issues concerning OMC's various health and welfare benefit plans.

The individual Defendants are former directors of OMC and Defendant Greenmarine Holdings, LLC is a former shareholder of the company. All plaintiffs were active or retired participants of the OMC Consolidated Health and Welfare Plan. Plaintiffs allege that for approximately three years prior to the OMC bankruptcy, defendants controlled the funding policy of the OMC Consolidated Health and Welfare Plan. In 1998, the OMC Consolidated Health and Welfare Plan had 6,700 participants. There were separate plan instruments as to funding, but the OMC Consolidated Health and Welfare Plan had a single Trust or Trust Fund. There was a single Trustee, a single Administrative Committee, and a single Management Committee. Plaintiffs allege that both Committees reported to defendants who retained all powers not delegated in their discretion to the employees on these Committees.

Plaintiffs further allege that prior to December 30, 1999, all the plan instruments had the identical or similar or consistent provisions for funding of the Trust to pay the claims. Plan A, which covered non-union retirees, and Plan B, which covered hourly employees represented by the Industrial Marine and Machinists Association, stated: "The Employer shall make contributions in such amounts and at such times as determined by the Company in accordance with plan objectives." Plaintiffs say the 1984 Retirement Plan, the plan affecting the funding of retiree benefits, is even more stringent in requiring a long term funding policy of all benefits. It states that the Management Committee (which plaintiffs allege was controlled by defendants) shall "determine the plan's short term and long term financial needs, with which the investment policy of the Trust shall be appropriately coordinated."

Plaintiffs sue the defendant directors for failure to have a proper funding method for and for other mismanagement of the OMC Consolidated Health and Welfare Plan. Counts I and II of Plaintiffs' Fourth Amended Complaint remain pending. Counts I and II allege a breach of fiduciary duty under ERISA for defendants' failure to fund the health plan sufficiently. Count I alleges that defendants did not provide any funding or put any assets aside to meet the long term financial needs of the retiree plan. Plaintiffs further allege that instead of providing for the Plan's long term financial needs, defendants deceptively drew up a new plan instrument (Plan E) which purported to cancel the duty as set forth in the 1984 Retirement Plan. Plan E states in paragraph 4.1: "The Company shall establish and direct implementation of a funding policy and method for the Plan which shall be consistent with the objectives of the Plan *and which may include a policy of not funding any or all Benefits.*"

In Count II, plaintiffs sue under all three plan instruments (Plan A, Plan B, and the 1984 Retirement Plan) for failure to put any money into the Trust Fund at all. Without any assets, the OMC Consolidated Health and Welfare Plan could not meet the administrative costs of operating a COBRA program. As a result, the plaintiffs lost the opportunity to elect continuation coverage through COBRA when the company shutdown.

### JONES DAY SUBPOENA

On or about October 15, 2005, plaintiffs served Jones Day with a subpoena for records requesting the production of certain documents and files relating to the OMC Health and Welfare Plan. The documents in question are no longer held by Jones Day, and are now held by the Trustee's counsel, the law firm of Shaw Gussis Fishman Glanz Wolfson and Towbin. OMC's Chapter 7 Trustee claims to stand in the shoes of OMC with

respect to OMC's privilege as it relates to its pre-petition communications with counsel.  In response to the subpoena, the Trustee produced more than ninety boxes of non-privileged OMC and Jones Day documents to the parties and prepared and produced a privilege log as to the remainder of the Jones Day documents.  Plaintiffs' motion to compel seeks the Jones Day documents withheld on the basis of the attorney-client privilege.  Plaintiffs' motion asserts that they are entitled to the documents listed on the Jones Day privilege log on the basis of the "fiduciary exception" to the attorney-client privilege for legal advice from ERISA plan counsel as to plan management or administration.

Because the court was unable to resolve the parties' dispute on the basis of the Trustee's privilege logs, it ordered OMC's Chapter 7 Trustee who has access to the documents to provide a more detailed privilege log supporting its claim that the fiduciary exception does not apply to the disputed documents.  On December 11, 2006, the Trustee complied and filed a revised privilege log regarding sixty-one (61) documents.  On January 3, 2007, Plaintiffs filed a Response regarding Documents 54, 57, 60-67, 69, 71-80.  Defendants and the Trustee filed Replies addressing these remaining disputed documents.

## DISCUSSION

Plaintiffs seek an order requiring production of document numbers 54, 57, 60-67, 69, and 71-80 in the Trustee's most recent privilege log (Doc. 250).  The Trustee agues that the court should not order production of these documents because they are attorney client privileged communications and the "fiduciary exception" to that privilege does not apply.  Defendants concur with the Trustee's position.  Beyond asserting the fiduciary exception, Plaintiffs do not challenge the sufficiency of the Trustee's assertion of the attorney-client privilege.  The court has reviewed the remaining disputed documents *in camera*.

A party may "obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1). Under the fiduciary exception to the attorney-client privilege, a fiduciary of an ERISA plan "must make available to the beneficiary, upon request, any communications with an attorney that are intended to assist in the administration of the plan." Bland v. Fiatallis North America, Inc., 401 F.3d 779, 787 (7th Cir. 2005) (quoting In re Long Island Lighting Co., 129 F.3d 268, 272 (2d Cir. 1997)). The exception is based on an ERISA fiduciary's obligation to provide full and accurate information to the plan beneficiaries regarding the administration of the plan. In re Long Is. Lighting, 129 F.3d at 271. The Seventh Circuit has stated: "[t]he attorney-client privilege should not be used as a shield to prevent disclosure of information relevant to an alleged breach of fiduciary duty." Bland, 401 F.3d at 787.

The same attorney may advise an employer in both its fiduciary and non-fiduciary capacities at different times. In re Long Is. Lighting, 129 F.3d at 272. "The employer's ability to invoke the attorney-client privilege to resist disclosure sought by plan beneficiaries turns on whether or not the communication concerned a matter as to which the employer owed a fiduciary obligation to the beneficiaries." Id. at 271. The fiduciary exception to the attorney-client privilege does not apply to documents which relate to non-fiduciary matters only. Id. at 272-73; see also Bland, 401 F.3d at 787-88 (holding fiduciary exception does not overcome the privilege where the legal advice concerns an employer's actions taken as the "manager of its business" rather than as a "fiduciary.").

**A.     Documents 61-66, 69, 71, and 73**

Documents 61-66 are described as "draft Benefits Update to be distributed to employees in connection with amendments to plans." They are communications between OMC's in-house counsel (Gordon Repp), OMC's Director of Human Resources and Employee Benefits Manager (Michael Savage), and Jones Day counsel (Ron Rizzo and Joni Andrioff) regarding draft Benefits Update to be distributed to employees in connection with amendments to the pension/401k and retiree medical plans. Documents 69 and 71 are essentially a memo from Michael Savage to Jones Day counsel, OMC in-house counsel, and three members of OMC's Human Resources Department (Darlene Lomax, Jim Rusk, and Laurel Wagenblast) requesting comments regarding three drafts of the Retiree Medical highlights brochure to be distributed to union and non-union retirees. Document 73 is outside counsel's comments to Savage and Repp regarding the drafts of the Retiree Medical highlights brochure.

Plaintiffs say they are entitled to documents 61-66, 69, 71, and 73 because distribution of information to employees about their health insurance is a function of plan administration. Plaintiffs argue that OMC may be acting as a settlor in changing the plan but not when it is communicating information to the participants as to the substance of changes. Defendants and the Trustee respond that these documents concern non-fiduciary settlor functions such as adoption and amendment of an ERISA plan. See Milwaukee Area Joint Apprenticeship Training Comm. for the Electrical Indus. v. Howell, 67 F.3d 1333, 1338 (7th Cir. 1995) (stating "fiduciary duties owed to participants and beneficiaries under ERISA apply only to the administration of a plan, not to its formation, amendment, or modification."). Defendants also point out that these documents were

drafted at a point in time when Plan E had not been adopted (July and August 1999) and OMC was in the process of seeking advice from counsel as to how to draft it. Defendants reason that the communications at issue have to be a settlor function because there was no Plan E to administer at that time.

There must be a fiduciary relationship for the fiduciary exception to apply. ERISA makes a person a fiduciary to the extent "he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A)(iii). ERISA fiduciaries are required to discharge their duties with respect to a plan "solely in the interest of participants and beneficiaries." 29 U.S .C. § 1104(a)(1). The question of whether a person is a fiduciary involves "factual determinations." See Pappas v. Buck Consultants, Inc., 923 F.2d 531, 538 (7th Cir. 1991).

According to the terms of the 1984 Plan, the Administrative Committee acted as administrator and named fiduciary and had "authority to control and manage the operation and administration of the Plan[,]" including the authority "[t]o prepare and distribute, in such manner as the Administrative Committee determines to be appropriate, information explaining the Plan." 1984 Plan §§ 3.1, 3.2©. Under Plan A and Plan B, the Administrative Committee also had responsibility for administering the Plan, interpreting its provisions, and complying with governmental regulations issued under ERISA relating to records of participants' eligibility and benefits under the Plan. Plans A §§ 2.1(a), 2.1 (e), 12.1, 12.3; Plan B §§ 2.1(a), 2.1(e). 11.1, 11.3. The Administrative Committee was thus charged with administering the plans and had discretionary authority over administration of the plans. Repp and Savage were fiduciaries due to their membership in Administrative Committee. 1/17/07 Hrg. Tr. 16, 30.

The Trustee and Defendants contend that OMC's representatives (Repp and Savage) were acting in a non-fiduciary capacity when they had these privileged communications with outside counsel regarding employee communications material. It is not always easy to determine where the distinction between fiduciary and non-fiduciary activities lie, but Documents 61-66, 69, 71, and 73 seem to fall on the fiduciary side. Case law confirms that communicating with plan participants and beneficiaries about benefits may be a fiduciary function. See e.g., Flanigan v. Gen. Elec. Co., 242 F.3d 78, 84 (2d Cir. 2001), cert. denied 534 U.S. 1065 (2001) (stating "[c]ommunicating information about future plan benefits is indeed a fiduciary obligation."); Bowerman v. Wal-Mart Stores, 226 F.3d 574, 590 (7th Cir. 2000) (stating "fiduciaries must communicate material facts affecting the interests of plan participants or beneficiaries . . . ."); Adams v. Freedom Forge Corp, 204 F.3d 475, 492 (3d Cir. 2000) (holding that a plan administrator acts in a fiduciary capacity "when explaining plan benefits and business decisions about plan benefits to its employees."); Sprague v. Gen. Motors Corp., 133 F.3d 388, 405 (6th Cir. 1998), cert. denied, 524 U.S. 923 (1998) (finding that an employer "may have acted in a fiduciary capacity when it explained its retirement program to early retirees."). As the Supreme Court has recognized, "ERISA itself specifically requires administrators to give beneficiaries certain information about the plan." Varity Corp. v. Howe, 516 U.S. 489, 502 (1996). ERISA requires plan administrators to give participants and beneficiaries a "sufficiently accurate" summary plan description (29 U.S.C § 1024(b)) and notice of "any material modification in the terms of the plan" (29 U.S.C. § 1022(a)).

The current record suggests, at least for purposes of discovery, that Repp's and Savage's communications with outside counsel about communicating changes in retiree

benefits to employees and retirees concerned a matter as to which OMC owed a fiduciary obligation to the participants and beneficiaries. See Varity, 516 U.S. at 502-03 (holding that when employer communicates with plan beneficiaries about benefits and when "reasonable employees . . . could have thought that [the employer] was communicating with them *both* in its capacity as employer *and* in its capacity as plan administrator" the employer can be found to be acting as a fiduciary); Bouboulis v. Transport Workers Union of America, 442 F.3d 55, 65 (2d Cir. 2006) (finding "[a]ssurances of plan benefits made to employees considering retirement could reasonably be thought to be communicated in the capacity of both an employer and plan administrator."). As OMC's Senior Counsel and Employee Benefits Manager, it is reasonable to assume that Repp and Savage had discretionary authority or control with respect to these employee/retiree communications. Repp and Savage were authorized by the plans to perform this function, and their responsibilities appear beyond merely clerical or ministerial tasks. Cf. Klosterman v. Western General Management, Inc., 32 F.3d 1119, 1123-24 (7th Cir. 1994) (holding defendant claims administration company's involvement in the preparation of a summary plan description was not as a fiduciary because it "had no discretionary authority or control with respect [to] the SPD; its responsibilities were purely clerical and thus insufficient to render it a fiduciary."); 29 C.F.R. § 2509.75-8 (indicating that a person who performs purely ministerial functions with respect to the preparation of employee communications material for an employee benefit plan within a framework of policies, interpretations, rules, practices, and procedures made by other persons is not a fiduciary).

Moreover, the Court cannot accept defendants' view that the drafting of Benefits Update and Retiree Medical highlights brochures to be distributed to employees/retirees

in connection with plan amendments is a non-fiduciary settlor function because Plan E had not yet been adopted. Although the Plan amendments had not yet been adopted and the changes were not effective for the most part until January 1, 2000, "changes to the Plan were adopted by OMC's board in May [1999]." See Doc. 67, PRIV 00978. In July and early August 1999, communications to employees regarding changes to the retiree medical plan occurred. Id. The documents plaintiffs seek to discover do not contain communications between outside counsel and settlors about the advisability of a business decision to amend the plan. Outside counsel was not being consulted for advice relating to the legal implications of a decision to amend the retire health plan. Rather, the communications at issue were made at a time when the business decision to change the retiree health plan had already been approved by OMC's Board of Directors. Moreover, there is no evidence that the Board of Directors had any discretionary authority to explain plan benefits changes to OMC's employees. The legal advice regarding the employee benefit communications was sought and given for the benefit of the participants and beneficiaries. See Fischel v. The Equitable Life Assurance, 191 F.R.D. 606, 610 (N.D. Ca. 2000) (holding documents reviewed by inside counsel that were intended to describe or communicate changes in plan benefits to beneficiaries were subject to the fiduciary exception to the attorney-client privilege because the documents "focused on word smithing and editing language disclosing plan changes for the benefit of beneficiaries as opposed to rendering legal advice to the trustees regarding the substance or advisability of those changes."). Finally, defendants cite no authority in support of their argument that a plan needs to be in a final form in order for fiduciary obligations to arise regarding preparation of employee and retiree communications material explaining approved plan changes.

The court concludes that the employee communications regarding changes to the retiree medical plan concerned a matter to which OMC's representatives owed a fiduciary obligation to the beneficiaries. Documents 61-66, 69, 71, and 73 are subject to the fiduciary exception to the attorney-client privilege.

**B.     Document 67**

Document 67 is a August 5, 1999 draft of Plan E with advice from outside counsel (Joni Andrioff) to OMC's in-house counsel (Gordon Repp) as well as Michael Savage and other outside counsel (Ronald Rizzo, Brian Easley, and John Hebert). Plaintiffs argue they are entitled to Document 67 because it is a "draft of an amendment that has already been made" and it contains advice to non-settlor plan officials as to what the Plan E amendments accomplished. Defendants and the Trustee respond that the fiduciary exception does not apply to the draft of Plan E with counsel's comments because Plan E was not adopted until December 30, 1999. "Thus, at the time document 67 was created, August 5, 1999, Plan E had not been adopted and OMC was still seeking advice from counsel as to how to draft it. These functions fall squarely within a settlor and the fiduciary exception does not apply." (Doc. 260 at 4).

Although Document 67 is a draft of Plan E with comments from outside counsel, it is irrelevant to the breach of fiduciary duty issues in this case. The Court's *in camera* review of Document 67 revealed that outside counsel's comments do not relate to a funding policy for the health plan or the language in Paragraph 4.1 of Plan E. At oral argument, the Trustee's counsel confirmed that outside counsel's letter does not include a substantive comment regarding Paragraph 4.1.  1/17/07 Hrg. Tr. at 39-40. The Court has further confirmed that the version of Paragraph 4.1 included in the Document 67 draft is identical

to the final version of Paragraph 4.1.  Because Document 67 does not relate to the breach of fiduciary duty alleged here, Document 67 need not be produced on relevancy grounds. See 1/17/07Hrg. Tr. at 40 (plaintiffs' counsel stating that if "[t]he draft at Paragraph 4.1 has in [Document 67] doesn't change in any subsequent reiteration of it.  It wouldn't tell us very much; I agree with that.").

**C.     Documents 54 and 57**

Document 54 is a February 18, 1999 fax to various OMC employees and copied to OMC's outside counsel and Mike Savage from David Haverick at Hewitt Associates LLC regarding OMC plan termination liabilities for pension/retirement plan.  Document 57 is essentially a March 10, 1999 email from David Haverick at Hewitt to OMC's outside counsel among other regarding ERISA cash flow projections.  The Trustee's log states that Documents 54 was created in anticipation of a dispute and potential litigation with the union concerning shutdowns and plan amendments.  The Trustee says Document 57 was created in order to analyze and assist with negotiations of shutdown agreements with the union. Defendants explain that these documents relate to the Pension and Retirement Plan which is not at issue in this litigation.  Defendants and the Trustee also contend that Documents 54 and 57 should not be produced because they are subject to the "liability exception to the fiduciary exception."

The Trustee's original privilege log (Doc. 223-3) indicates that Document 54 was withheld by the Trustee as attorney work product and on the basis of the attorney-client privilege.  Because plaintiffs have not challenged the Trustee's assertion of work product, only documents withheld on the basis of attorney-client privilege are at issue.  See Doc. 243.  For this reason, Plaintiffs are not entitled to Document 54.

Having reviewed Document 57 *in camera*, the court questions as an initial matter whether the attorney client privilege in fact applies. The Trustee "bears the burden of demonstrating that all of the requirements for invoking the attorney-client privilege have been met." In re Matter of Grand Jury Proceedings, 220 F.3d 568, 571 (7th Cir. 2000). Document 57 is a email written by David Haverick at Hewitt with an attachment regarding ERISA contribution projections. Haverick states that the email is intended for Joe Tomzack and Gary Radwanski and is in response to a question raised by Tomzack and Radwanski regarding use of a certain interest/discount rate in cash flow projections. The email is directed to Tomzack and Radwanski and two other OMC employees (J. Pekarek and G. Radwans). The Trustee's log does not identify Tomzack's, Radwanski's, Pekarek's and Radwans' titles. Outside counsel and Mike Savage, among others at OMC and Hewitt, are carbon copied on the email.

Not all information transmitted to an attorney is privileged. "The attorney-client privilege does not protect all communications between an attorney and his client. Rather, it shields from disclosure only communications made for the purpose of obtaining legal advice." United States v. White, 970 F.2d 328, 335 (7th Cir. 1992); United States v. Evans, 113 F.3d 1457, 1464 (7th Cir. 1997) (stating "[a] communication is not privileged simply because it is made by or to a person who happens to be a lawyer."). Document 57 does not contain any attorney comments and does not appear to reveal, either directly or indirectly, confidential legal advice. Nor does Document 57 appear to be a request for legal advice or to have been provided to counsel for the purpose of securing legal advice. The current circumstances suggest that Document 54 is not protected from disclosure by the attorney-client privilege. However, the Court recognizes that the sufficiency of the

Trustee's assertion of the attorney-client privilege has not been briefed and argued by the parties. For this reason, if the Trustee and/or Defendants want to pursue the issue of the applicability of the privilege to Document 54, they may file a motion to reconsideration setting forth the specific facts necessary to establish that the privilege applies to both the email and attachment by February 14, 2007.

**D. Documents 60, 72, and 74-80**

Document 60 is a fax from OMC's in-house counsel to outside counsel attaching a draft, with handwritten notes, of an Investment Management Agreement from SEI Investments Management Corporation regarding the OMC Pension and Retirement Plans. Documents 72 and 74-80 relate to the merger of the Pension Plan into the Retirement Plan to form a single plan. These documents are unrelated to plaintiffs' claims that defendants failed to sufficiently fund OMC's health plan and attempted to cancel the funding duty set forth in the 1984 Retirement Plan by drafting Paragraph 4.1 of Plan E. Documents 60 and 72, 74-80 are therefore not discoverable on relevancy grounds

**E. Substantial Need**

Without any analysis, Plaintiffs argue that they are entitled to the documents under the "substantial need" exception even if the fiduciary exception does not apply. The "substantial need" exception set forth in Federal Rule of Civil Procedure 26 applies to attorney work product and not the attorney client privilege. Vodak v. City of Chicago, 2004 WL 783051, at *4 (N.D. Ill. Jan. 16, 2004). An assertion of attorney-client privilege may not be overcome upon a showing of substantial need. Id. Because plaintiffs have not challenged the Trustee's assertion of the work-product doctrine, only documents withheld under the attorney-client privilege remain at issue. The requested documents are not

subject to production under the substantial need exception to the work production doctrine.

## **CONCLUSION**

For these reasons, Plaintiffs' Motion to Compel Production of Documents in Enforcement of Subpoena (Doc. 223-1) is granted in part and denied in part.

**E N T E R:**

*Nan R. Nolan*

**Nan R. Nolan**
**United States Magistrate Judge**

**Dated: February 5, 2007**