IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMES BAKER, RAYMOND WOLFE, WILLIAM PATE, GARY GERDMAN, PATRICK GIDDINGS, and PATRICIA DENSMORE, <br><br>Plaintiffs, <br><br>v. <br><br>ALFRED KINGSLEY, GARY D. DUBERSTEIN, DAVID JONES, JR., FRANK SICA, and GREENMARINE HOLDINGS, LLC, <br><br>Defendants. | No. 03 C 1750 <br><br>Judge Robert W. Gettleman |

## MEMORANDUM OPINION AND ORDER

Plaintiffs James Baker, Raymond Wolfe, William Pate, Gary Gerdman, Patrick Giddings, and Patricia Densmore, individually and on behalf of all others similarly situated, filed a three-count fourth amended complaint against defendants Alfred Kingsley, Gary Duberstein, David Jones, Jr., Frank Sica, and Greenmarine Holdings, LLC ("Greenmarine"), alleging a breach of fiduciary duty under § 404 of the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1104, by defendant's failure to fund an employee benefit plan sufficiently. In a Memorandum Opinion and Order dated October 10, 2006, this court denied defendants' motion to dismiss plaintiffs' fourth amended complaint, but granted defendants' motion for summary judgment as to Count III. Baker v. Kingsley, 2006 WL 2927606 (N.D. Ill. 2006).

Plaintiffs have filed a motion for class certification pursuant to Fed. R. Civ. P. 23. Plaintiffs seek to certify a class on behalf of all former benefit plan participants, which they believe contains approximately 6700 individuals. Defendants oppose the motion to certify the class and have combined their opposition to (another) motion to dismiss, arguing that: (1)

plaintiffs do not have standing; and (2) plaintiffs do not meet the requirements of Fed. R. Civ. P. 23(a) or 23(b). For the reasons discussed below, plaintiffs' motion for class certification is granted.

## **FACTS**[1]

Plaintiffs are former employees of Outboard Marine Corporation ("OMC") at its Waukegan, Illinois, manufacturing and production plant.[2] Plaintiffs Baker and Wolfe were members of the machinists' labor union, plaintiffs Giddings and Densmore were non-union employees, and plaintiffs Pate and Gerdman were retirees. Plaintiffs Baker, Wolfe, Giddings, and Densmore worked at the Waukegan plant until it closed on December 21, 2000, on which date OMC terminated them. All named plaintiffs were retired or eligible for retirement as of the date the plant closed.

As of December 21, 2000, all named plaintiffs were participants in the OMC Consolidated Health and Welfare Plan, an ERISA welfare plan. According to plaintiffs, the plan operated through several different plan instruments. Plaintiffs Densmore and Giddings were in Plan A, which covered managerial and non-union employees, and which required a "funding method or policy" that was "consistent with the objectives of the plan." Plaintiffs Baker, Wolfe and Pate were in Plan B, which covered union employees and union retirees, and which contained the same funding policy language as Plan A. Plan C, which covered union employees

---

[1]A fuller recitation of these facts can be found in the court's October 10, 2006, opinion. Baker, 2006 WL 2927606.

[2]OMC is owned by defendant Greenmarine.

and union retirees in the Milwaukee plant, including plaintiff Gerdman, contained the same language.[3] Plaintiff Densmore was originally in Plan D, which covered union employees in the Georgia plant, but was in Plan A when she was terminated. Defendants argue that plaintiffs Baker, Wolfe and Pate were not in Plan B, but instead in Plan E, which covered retirees and retirement-eligible employees, and which had no funding requirement. Plaintiffs claim that plan E is invalid because it was allegedly "adopted secretly, on the eve of bankruptcy, and not disclosed to the retirees within 210 days, as required by Section 104 of ERISA, 29 U.S.C. § 1124."

On December 22, 2000, OMC filed for Chapter 11 bankruptcy and ceased providing health benefits to employees and retirees under the benefit plan. On February 9, 2001, the bankruptcy court approved the sale of substantially all of OMC's assets for approximately $90 million.

Plaintiffs allege that defendants breached their fiduciary duty to plaintiffs under § 404 of ERISA by failing to: (1) place funds in the OMC Consolidated Plan sufficient to meet the long-term needs of OMC retirees; and (2) reserve enough funds to offer COBRA health coverage to employees, including those eligible for retirement, who were terminated by OMC when the Waukegan plant closed.

---

[3] At the time OMC filed for bankruptcy, there were no active employees in Plan C, because the Milwaukee plant had closed earlier in 2000. Plan C contained only retirees.

**DISCUSSION**

Standing

Defendants argue that plaintiffs lack standing[4] to bring an action under § 502 of ERISA because the statute allows only current, not former, plan participants to bring suits.[5] Defendants' position is incorrect. As this court held in its October 10, 2006, order, plaintiffs have a right to seek equitable relief in the form of a constructive trust under § 409 of ERISA. Further, as plaintiffs discuss, federal law defines a "participant" as "an employee or former employee...who is or may become eligible to receive a benefit of any type from an employee benefit plan..." 28 U.S.C. § 1002(7). Numerous courts recognize this right of former plan participants to bring suit to recover benefits under ERISA See, e.g., Waller v. Blue Cross, 32 F.3d 1337, 1339-40 (9th Cir. 1993) (former employees had standing to bring suit regarding a terminated pension plan to pursue equitable remedy for breach of fiduciary duty); Wright v. Bosch Trucking Co., 804 F. Supp. 1069, 1070-72 (C.D. Ill. 1992) (former employee had standing to pursue equitable remedy for breach of fiduciary duty when his benefit plan was terminated while underfunded).

---

[4]Additionally, defendants argue that plaintiffs' claims fail because they have brought suit "on behalf of themselves and others similarly situated," rather than on behalf of the plan as required by ERISA § 502(a)(2). Defendants' argument is simply a red herring. Plaintiffs have consistently alleged that the instant lawsuit seeks relief on behalf of the plan, not on behalf of individual plaintiffs.

[5]Defendants also argue that plaintiffs lack standing because they cannot identify a plan document that requires defendants to provide funding for retiree medical costs. Defendants' argument, which is essentially a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), is not properly raised in response to plaintiffs' motion for class certification. Plaintiffs have given defendants adequate notice of the claims against them as required by Fed. R. Civ. P. 8(a), and this court has previously denied defendants' motion to dismiss. If defendants wish to attack the factual basis for the claims against them, they should do so at trial or in a motion for summary judgment.

Defendants argue that former employees are participants only if they have: (1) a reasonable expectation of returning to covered employment, or (2) a colorable claim to vested benefits, as set out in Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989). Defendants argue that because the benefits in question did not "vest," plaintiffs lack standing to bring a claim under ERISA. The Seventh Circuit, however, has interpreted the Supreme Court's use of "vested benefits" broadly to mean that "standing is available to any former employee who has a colorable claim to benefits which the employer promised to provide pursuant to the employment relationship and which a non-frivolous argument suggests have accrued to the employee's benefit." Panaras v. Liquid Carbonic Industries Corp., 74 F.3d 786, 791 (7th Cir. 1996). Further, despite defendants' claims, plaintiffs do argue (in Count II) that their retirement benefits had accrued to them because they were entitled to 36 months of COBRA coverage upon retirement or termination of employment. Under Panaras, then, plaintiffs have standing to sue defendants under ERISA.

Finally, all named plaintiffs were employees and plan participants at the time of the alleged violation: the decision not to provide sufficient funding for COBRA coverage or retiree medical costs. As noted by the Fifth Circuit, "the employer should not be able through its own malfeasance to defeat the employee's standing." Christopher v. Mobil Oil Corp., 950 F.2d 1209, 1221 (5th Cir. 1992). See also Panaras, 74 F.3d at 791; Willett v. Blue Cross & Blue Shield, 953 F.2d 1335, 1342-43 (11th Cir. 1992); Amalgamated Clothing & Textile Workers v. Murdock, 861 F.2d 1406, 1418 (9th Cir. 1988). For these reasons, the court finds that plaintiffs have standing to bring claims under ERISA.

Requirements for Class Certification

Fed. R. Civ. P. 23, which governs class actions, requires a two-step analysis to determine if class certification is appropriate. First, plaintiffs must satisfy all four requirements of Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Harriston v. Chicago Tribune Co., 992 F.2d 697, 703 (7th Cir. 1993). These elements are a prerequisite to class certification, and failure to meet any one of them precludes certification of a class. Second, the action must also satisfy one of the conditions of Rule 23(b). Joncek v. Local 714 Int'l Teamsters Health and Welfare Fund, 1999 WL 755051, *2 (N.D. Ill. 1999).

A court evaluating whether a party has met its burden of proving that a class should be certified should not consider the merits of the underlying claim, Eisen v. Carlisle and Jacquelin, 417 U.S. 156, 166 (1974), but it is appropriate to "probe behind the pleadings." General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 160 (1983); see also Szabo v. Bridgeport Machines, Inc., 249 F.3d 672, 676 (7th Cir. 2001) (district court must determine actual conformance with Rule 23(a)).

*Rule 23(a)*

Plaintiffs seek to certify a class of 6,700 former plan participants to recover losses to the terminated benefit plan under ERISA § 409, 29 U.S.C. § 1109.[6] Defendants do not dispute that

---

[6]Plaintiffs claim that class certification is a "necessary procedural device" to sue on behalf of a terminated plan. Plaintiffs' assertion is incorrect. Although plaintiffs may sue as a class, doing so is not a requirement for relief under ERISA 409, 29 U.S.C. § 1109. See, e.g., Waller, 32 F.3d at 1339-40.

plaintiffs meet the numerosity requirements of Rule 23(a). Defendants argue, however, that plaintiffs cannot satisfy Rule 23(a)'s commonality, typicality, or adequacy requirements.

The requirements of commonality and typicality are similar. Commonality "requires that there be questions of law and fact common to the class," Rosario v. Livaditis, 963 F.2d 1013, 1017 (7th Cir. 1992), and that a plaintiff's "claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and ... her claims are based on the same legal theory." Oshana v. Coca-Cola Co., 472 F.3d 506, 514 (7th Cir. 2006). In the instant case, the named plaintiffs do not seek individual relief, but instead seek relief on behalf of the plan itself. It necessarily follows, then, that all plaintiffs share a common claim: the alleged breach of fiduciary duty by the plan and its directors.

The same can be said for the typicality of the named plaintiffs' claims; plaintiffs bring suit on behalf of the plan for injuries sustained as a result of the alleged decision not to fund the plan adequately. Defendants' argument that plaintiffs Gerdman and Giddings have atypical claims is unavailing. Although those plaintiffs did sign releases of claims, those releases did not bar the instant action because those releases specifically excluded claims for retiree medical benefits. Further, even had they not contained such a specific exclusion, ERISA itself prohibits parties from waiving claims for breaches of fiduciary duty: "any provision in an agreement or instrument which purports to relieve a fiduciary, from responsibility or liability for any responsibility, obligation, or duty under this part shall be void as against public policy." 29 U.S.C. § 1110. The court therefore finds that the named plaintiffs have claims typical of the class.

Finally, the court must deem the named plaintiffs adequate representatives of the class as a whole. Named plaintiffs are adequate if they "have a sufficient interest in the outcome to ensure vigorous advocacy." Chapman v. Worldwide Asset Mgmt., LLC, 2005 WL 2171168, *4 (N.D. Ill. Aug. 30, 2005). Plaintiffs claim that they represent the class sufficiently because each named plaintiff suffered financially from defendants' alleged fiduciary breach. Defendants claim that plaintiffs are inadequate representatives because of conflicts between members of the class and their putative class counsel.[7] According to defendants, the putative class counsel previously represented the Independent Merchants and Machinists Association ("IMMA") during collective bargaining and the negotiating of the Waukegan Shutdown Agreement, as well as the OMC bankruptcy proceeding. During that time, counsel made settlement offers on behalf of IMMA members that were not in the best interests of all proposed class members. As plaintiffs note, however, the IMMA is no longer a party to the instant lawsuit, and the claims made on their behalf have been dropped. There is therefore no longer any potential conflict of interest between members of the proposed class and the putative class counsel, and the court finds that the named plaintiffs are adequate representatives of the proposed class.

---

[7]Defendants also claim that plaintiffs are inadequate representatives because two plaintiffs signed release forms and because the ERISA breach of fiduciary duty claim is barred by the applicable statute of limitations. As discussed above, the release forms signed by plaintiffs Gerdman and Giddings do not render them inadequate representatives. Additionally, this court previously denied defendants' motion to dismiss the fiduciary breach claims on the grounds that they were time-barred, and it will not revisit the issue now.

*Rule 23(b)*

In addition to meeting the four requirements of Rule 23(a), the proposed class action must also satisfy one of the conditions of Rule 23(b). Joncek, 1999 WL 755051 at *2 (and cases cited therein). Plaintiffs seek certification under one of two provisions of Rule 23(b). A class can be certified under Rule 23(b)(3), the provision originally proposed by plaintiffs, if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other methods for the fair and efficient adjudication of the controversy." As defendants correctly point out, however, Rule 23(b)(3) requires the court to let class members opt out of the class and pursue individual claims (see Fed. R. Civ. P. 23(c)(2)), but under ERISA § 502(a)(2), participants may not opt out of a class, because the claim is for recovery to the plan as a whole, rather than to individual claimants. The court may therefore not certify the class under Rule 23(b)(3).

Plaintiffs seek in the alternative to certify the class pursuant to Rule 23(b)(1), which provides for certification of the class if:

> [T]he prosecution of separate actions by or against individual members of the class would create a risk of (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

Although the Supreme Court has cautioned that Rule 23(b)(1) should be "narrowly interpreted," "[a]mong the traditional varieties of representative suit encompassed by Rule 23(b)(1)(B) were those involving 'the presence of property which called for distribution or management.'" Ortiz v. Fibreboard Corp., 527 U.S. 815, 833 (1999) (citing J. Moore & J.

Friedman, 2 Federal Practice 2240 (1938)). Because the relief sought by plaintiffs involves the recovery and distribution of plan assets, separate actions by individual plaintiffs would impair the ability of other class members to protect their interests. Plaintiffs therefore meet the requirements of Rule 23(b). Because plaintiffs have standing to bring this action and meet the requirements of Rule 23(a) and (b), the court grants plaintiffs' motion for class certification. The vague class definition suggested by plaintiffs, however, must give way to the more specific relief plaintiff seek. Plaintiffs correctly assert that they are suing as a class to establish a constructive trust on behalf of the plan, and the court therefore certifies the class on behalf of the plan itself.

## CONCLUSION

For the reasons discussed above, plaintiffs' motion for class certification is granted and defendants' renewed motion to dismiss is denied. Because plaintiffs' motion for class certification fails to define the class or classes with sufficient precision,[8] plaintiffs are directed to submit proposed class definition(s) to the court and defendants' counsel on or before June 8, 2007. This matter is set for a report on status June 13, 2007, at 9:30 a.m.

**ENTER:**     **May 31, 2007**

    _____
**Robert W. Gettleman
United States District Judge**

---

[8] According to the fourth amended complaint, plaintiffs may be seeking certification of three classes, although the motion for class certification mentions a single class of participants in the OMC Consolidated Health and Welfare Plan who were entitled to medical benefits as of the date of the bankruptcy petition, December 22, 2000. In addition, plaintiffs' motion papers make clear that the class of participants is suing on behalf of the plan, rather than as individuals.